**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Charles W. WILSON, Defendant– Appellant.**

**No. 92–1833.**

United States Court of Appeals, Seventh Circuit.

Argued Dec. 1, 1992.

Decided Feb. 8, 1993.

**350**

Zaldwaynaka L. Scott, Barry R. Elden, Ross O. Silverman (argued), Asst. U.S. Attys., Office of the U.S. Atty., Crim. Receiving, Appellate Div., Chicago, IL, for plaintiff-appellee.

Francis X. Speh, Jr. (argued), Chicago, IL, for defendant-appellant.

Before CUDAHY and RIPPLE, Circuit Judges, and LAY, Senior Circuit Judge.[*]

RIPPLE, Circuit Judge.

On February 24, 1992, a jury convicted Charles Wilson of conspiring to impair and impede the Internal Revenue Service (IRS) in the computation, assessment, and collection of income taxes and the collection of information regarding cash transactions involving more than $10,000. *See* 26 U.S.C. § 6050I (1988). The district court sentenced Mr. Wilson to thirty-four months' incarceration to be followed by three years' supervised release. On appeal, Mr. Wilson challenges a series of evidentiary rulings and the sentencing decision of the district court. For the reasons that follow, we affirm.

## I

### BACKGROUND

Section 6050I of Title 26 requires that certain transactions involving large amounts of currency be reported to the Internal Revenue Service. The purpose of the section is to help the service identify unreported income. In pertinent part Section 6050I provides:

> **(a) Cash receipts of more than $10,000–** Any person—
>
> (1) who is engaged in a trade or business, and
>
> (2) who, in the course of such trade or business, receives more than $10,000 in cash in 1 transaction (or 2 or more related transactions), shall make the return described in subsection (b) with respect to such transaction (or related transactions) at such time as the Secretary may by regulations prescribe.
>
> . . . .
>
> **(f) Actions by payors.—**
>
> (1) **In general.**—No person shall for the purpose of evading the return requirements of this section—
>
>> (A) cause or attempt to cause a trade or business to fail to file a return required under this section.
>>
>> (B) cause or attempt to cause a trade or business to file a return required under this section that contains a material omission or misstatement of fact, or
>>
>> (C) structure or assist in structuring, or attempt to structure or assist in structuring, any transaction with one or more trades or businesses.

26 U.S.C. § 6050I (1988).

In February 1990, Eddie Richardson purchased a 1990 Trofeo from Sybolt Oldsmobile. The total purchase price of the car was $27,000. Richardson traded-in a 1986 Toronado, appraised by Sybolt at $5,000, and placed a cash deposit of $9,200 on the new car. Richardson attempted to finance the balance of the purchase price in his brother Jesse Richardson's name; however, the credit application was denied. Consequently, Richardson requested the return of his cash deposit. Pursuant to dealership policy, Sybolt would only refund the deposit as a check, which Richardson refused. Several days later, Richardson arranged to have Mr. Wilson trade-in a 1984 Cadillac on the Trofeo purchase. Later that week, Mr.

---

[*] The Honorable Donald P. Lay of the United States Court of Appeals for the Eighth Circuit is sitting by designation.

Wilson repurchased the 1984 Cadillac he had traded-in on Richardson's purchase. Again, the purchase was made with a large cash deposit of less than $10,000.

Both Richardson and Mr. Wilson were indicted on charges of conspiring to defraud the United States Government through the structuring of the Trofeo purchase. Specifically, Mr. Wilson was charged with trading-in a 1984 Cadillac toward Eddie Richardson's purchase of a new 1990 automobile in order to reduce the purchase price of Richardson's automobile below $10,000. Several witnesses testified at both trials that it was Richardson's intention to avoid spending over $10,000 in cash so that no forms would be filed with the IRS. Mr. Wilson claimed that he was unaware of any such intent on Richardson's part and that he did not intend to defraud the IRS.

## II

## ANALYSIS

### A. *Evidentiary Rulings*

Mr. Wilson first argues that the district court erred in allowing the government to cross-examine him on a series of alleged previous actions. Specifically, Mr. Wilson objects to the government impeaching his trial testimony by reference to prior acts of perjury in an unrelated trial, bribes paid to police officers, and prior car purchases involving the use of nominees (*i.e.,* registering and financing the automobiles in the names of other persons). He submits that the district court failed to determine whether the probative value of the evidence outweighed the prejudice from its admission as required under Federal Rule of Evidence 403. He contends that the probative value of evidence admitted was substantially outweighed by the danger of unfair prejudice.

█ We review a district court's evidentiary rulings under an abuse of discretion standard. *United States v. Welch,* 945 F.2d 1378, 1383 (7th Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 1235, 117 L.Ed.2d 469 (1992). The trial court has wide discretion in managing cross-examination and ruling upon admission of evidence. *United*

States v. Glecier, 923 F.2d 496, 503 (7th Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 54, 116 L.Ed.2d 31 (1991). We shall now consider each of Mr. Wilson's challenges in turn.

### 1.

█ Mr. Wilson first asserts that the government should not have been permitted to cross-examine him regarding his prior convictions for failure to file federal income tax returns. Federal Rule of Evidence 609(a)(2) provides that

evidence that any witness has been convicted of a crime shall be admitted if it involved dishonesty or false statement, regardless of the punishment.

A conviction for failure to file tax returns is a crime involving dishonesty. *See Dean v. TransWorld Airlines,* 924 F.2d 805, 811 (9th Cir.1991) (conviction for failure to file tax returns involves dishonesty within the meaning of 609(a)(2)); *United States v. Thompson,* 806 F.2d 1332, 1339 (7th Cir. 1986) (prior conviction for filing false state tax returns admissible to impeach the defendant under Rule 609(a)(2)). When admitting evidence of prior convictions involving dishonesty under Rule 609(a)(2) to impeach, the district court is not required to balance the prejudicial impact of the evidence against its probative value. *United States v. Noble,* 754 F.2d 1324, 1331 (7th Cir.), *cert. denied,* 474 U.S. 818, 106 S.Ct. 63, 88 L.Ed.2d 51 (1985). Accordingly, we cannot accept that the district court committed error by permitting the government to cross-examine Mr. Wilson regarding his prior tax convictions.

### 2.

█ Mr. Wilson next asserts that the government should not have been permitted to cross-examine him regarding a previous proceeding, unrelated to the present action, in which he had testified and admitted under oath that he had committed perjury. The district court did not allow the government to inquire into the circumstances surrounding the prior perjury. Tr. at 227–28. Federal Rule of Evidence 608(b) provides:

Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of the crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness. . . .

Perjury is an act of dishonesty within the permissible scope of cross-examination under Rule 608(b). *Varhol v. National R.R. Passenger Corp.*, 909 F.2d 1557, 1567 (7th Cir.1990). Accordingly, we cannot agree that the district court abused its discretion in allowing the government to cross-examine Mr. Wilson regarding his prior acts of perjury.

 Additionally, the government was permitted to elicit, in cross-examination, that Mr. Wilson had previously paid to have his driver's license record altered and had paid bribes to Chicago police officers. Bribery is probative of a witness' character for truthfulness or untruthfulness and is a permissible area of inquiry under Rule 608(b). Therefore, the district court did not abuse its discretion in permitting the government to cross-examine Mr. Wilson regarding his prior acts of bribery.

 Mr. Wilson also challenges the district court's decision to permit the government to question him on cross-examination about his use of nominees to purchase cars on previous occasions. Evidence was admitted that tended to show that Mr. Wilson had been involved in over forty such transactions in the three years prior to this case. In response to these questions, Mr. Wilson admitted purchasing "a lot" of cars, which he titled in other persons' names, but denied that he was attempting to conceal the fact that he was the purchaser of the cars. The government argues that these specific acts of conduct were admissible under Rule 608(b) because they are probative of Mr. Wilson's character for untruthfulness. Specifically, the government asserts that use of the nominees involved fraud and deceit because Mr. Wilson intentionally made false statements to conceal the fact that he was the purchaser. The govern-

ment suggests that the fact that Mr. Wilson failed to file federal income tax returns during those same years evidenced his motive to conceal his large personal expenditures. We cannot say that the district court abused its discretion in allowing this evidence.

3.

 Mr. Wilson's final evidentiary challenge is that the district court should not have admitted evidence that he had been involved in a transaction similar to the one currently charged. Specifically, the government presented evidence during its case-in-chief regarding Mr. Wilson's purchase of an Oldsmobile Trofeo from Sybolt Oldsmobile in February 1990, which he registered and financed in the name of Sherry Boler. No criminal charges were brought as a result of the transaction. Although not admissible to show criminal propensity, evidence of uncharged conduct is admissible to establish "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R.Evid. 404(b). The government asserts that the evidence regarding the Boler transaction was not directed toward Mr. Wilson's propensity to commit the crime charged. Rather, submits the government, it was relevant to Mr. Wilson's intent and plan to help Richardson structure a substantial purchase and avoid the filing of a Form 8300 with the IRS. Mr. Wilson placed his intent in issue, continues the government, by denying that he intended to help Richardson avoid the filing of a Form 8300 with the IRS. *See United States v. Schweihs*, 971 F.2d 1302, 1311 (7th Cir.1992) (district court did not abuse its discretion in finding intent at issue when defendant argued his actions were not intended and he had no knowledge they were accomplishing a criminal result).

We review a district court's decision to admit evidence under Rule 404(b) under an abuse of discretion standard. *United States v. Neely*, 980 F.2d 1074, 1079 (7th Cir.1992). In order to admit evidence of other acts under Rule 404(b), the district court must find that:

(1) the evidence is directed toward establishing a matter in issue other than the

defendant's propensity to commit the crime charged, (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue, (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act, and (4) the probative value is not substantially outweighed by the danger of unfair prejudice.

*Neely,* at 1079 (quoting *United States v. Lennartz,* 948 F.2d 363, 366 (7th Cir.1991)).

The Boler transaction occurred in the same month and year as the charged offense and was similar in nature. Both transactions involved large sums of cash (but less than $10,000 in cash); both transactions involved financing through nominees other than Mr. Wilson or Richardson; and both transactions were titled in the names of the nominees. Mr. Wilson had reported only $8,500 in adjusted gross income on his 1990 income tax return, and Richardson failed to file a 1990 return at all. Thus both men had an incentive to conceal their large cash expenditures from the government.[1] Furthermore, both during the evidentiary phase and at the conclusion of the trial, the district court gave limiting instructions to the jury on the nature of the evidence concerning the Boler transaction. Tr. at 89, 140, 317–18. *See United States v. Braasch,* 505 F.2d 139, 149 (7th Cir.) (recognizing the effectiveness of limiting instructions in reducing the potential of prejudice of 404(b) evidence), *cert. denied,* 421 U.S. 910, 95 S.Ct. 1561, 43 L.Ed.2d 775 (1974); *Neely,* 980 F.2d at 1079 (same). Given the care the district court exercised in limiting the potential prejudice to Mr. Wilson and the highly probative nature of the evidence, we cannot conclude that the district court abused its discretion in allowing evidence of the Boler transaction.

### B. *Prosecutorial Conduct During Government's Closing Argument*

■■■ Mr. Wilson argues that remarks made by the prosecutor during closing ar-

guments treated prior uncharged conduct as evidence of his guilt. He contends that the prosecutor's statements must be considered reversible error. Specifically, the prosecutor said: "the defendant had done this previously in the past, ... he had dozens of cars in other peoples' names, and even a building." Tr. at 311.

"As a general matter, 'improper comments during closing argument rarely rise to the level of reversible error,' and considerable discretion is entrusted to the district court to supervise the arguments of counsel." *Moylan v. The Meadow Club, Inc.,* 979 F.2d 1246, 1250 (7th Cir.1992) (citations omitted). Even if we were to conclude that the government's words were ill-chosen,

> [w]e will not lightly overturn a criminal conviction "on the basis of a prosecutor's comments standing alone" ... [O]ur analysis proceeds in two steps. First, we examine whether the prosecutor's comment was improper; if it was, then we evaluate the remark in light of the entire trial and determine whether it deprived the defendant of a fair trial.

*Neely,* 980 F.2d at 1083 (citations omitted); *see also United States v. Stillwell,* 900 F.2d 1104, 1112 (7th Cir.) (defendant is only entitled to a new trial if the government's comments were improper and prejudiced the defendant's right to a fair trial), *cert. denied,* 498 U.S. 838, 111 S.Ct. 111, 112 L.Ed.2d 81 (1990).

Moreover, Mr. Wilson failed to object to the prosecutor's remarks at trial. Thus, the district court's ruling may not be reversed absent "plain error." *Neely,* 980 F.2d at 1083; *United States v. Jungles,* 903 F.2d 468, 479 (7th Cir.1990). Viewing the prosecutor's comment within the context of the whole trial, we believe that this remark, while error, does not justify reversal under the plain error standard.

### C. *Sentencing*

■■■ In sentencing, the district court increased Mr. Wilson's offense level by two

---

1. *See Huddleston v. United States,* 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988) (admissibility under Rule 404(b) does not require a preliminary finding by the district court by a preponderance of the evidence that the similar act occurred, only necessary that a jury could reasonably conclude that the act occurred).

points, pursuant to Sentencing Guideline 3C1.1,[2] for obstructing justice by lying on the witness stand. Mr. Wilson argues that the district court failed to make an independent determination that he had lied on the stand and instead departed upward based solely on a rejection of his trial testimony. *See United States v. Lozoya–Morales*, 931 F.2d 1216 (7th Cir.1991) (upward departure under § 3C1.1 requires independent determination that the defendant lied). Although a district court should not automatically enhance the sentence of every defendant who takes the stand and is then convicted, we review a sentencing court's determinations with deference. We shall reverse the district judge's sentencing only if it is clearly erroneous. *United States v. Corn*, 956 F.2d 135, 136 (7th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 1574, 118 L.Ed.2d 218 (1992). At the sentencing phase, the district court stated on the record that

> not only did [Mr. Wilson] use a false address and a different name, ... but also there is a false driver's license number on that document, and I think that is highly significant. Under all of the circumstances I regret to say that I have to agree with the Government, that the testimony was willfully false and the adjustment is proper and therefore the two-point adjustment will stand in this case.

Sentencing Tr. at 11. Accordingly, we cannot accept that the district court erred in failing to make an independent judgment that Mr. Wilson lied on the stand. Nor are we persuaded that the independent assessment was clearly erroneous.

### Conclusion

The judgment of the district court is affirmed.

AFFIRMED.

---

**2.** Section 3C1.1 provides:
If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels.
U.S.S.G. § 3C1.1.